IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Wendi B. Nance, ) | C/A NO. 3:13-1803-CMC-JDA |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| University of South Carolina, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Plaintiff's complaint asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e, *et seq.* Defendant filed a motion for summary judgment, to which Plaintiff responded and Defendant thereafter replied. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pre-trial proceedings and a Report and Recommendation ("Report") on dispositive issues. On June 9, 2015, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted and this matter be dismissed with prejudice. ECF No. 63. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed objections to the Report on July 20, 2015; Defendant filed a reply to Plaintiff's objections on August 10, 2015.

**I. STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.

*See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report's recommendation that Defendant should be granted summary judgment. Accordingly, the court adopts the Report by reference in this Order. Defendant is entitled to summary judgment as to all claims.

## II. Discussion

Plaintiff presents six objections to the Report. However, Plaintiff does not object to the recommendation that Defendant be granted summary judgment on Plaintiff's claim for retaliation and Plaintiff's claim of alleged racial discrimination in the denial of a raise or other monetary benefits due to Defendant's failure to conduct performance evaluations. Accordingly, for the reasons noted by the Magistrate Judge, Defendant is entitled to summary judgment on these claims and they are dismissed with prejudice.

### A. Race Discrimination

The Report recommends granting Defendant's motion for summary judgment on Plaintiff's claim for race-based disparate treatment relating to the hiring of Delk; the failure to promote Plaintiff to the position of Senior Director of Development (SDoD); and her working conditions. As to Plaintiff's claims regarding the Delk hiring and failure to promote, the Report finds Plaintiff has

failed to establish that the legitimate, nondiscriminatory reasons advanced by Defendant were pretextual. Regarding Plaintiff's claim of discrimination in working conditions, the Report finds that Plaintiff has failed to establish a *prima facie* case under the *McDonnell Douglas*[1] burden shifting framework.

### 1. Hiring of Elaine Delk/Executive Director

The Report assumes without deciding Plaintiff can establish a *prima facie* case of racial discrimination in the hiring of Delk, but concludes that Plaintiff has failed to show Defendant's proffered legitimate nondiscriminatory reason for hiring Delk was pretextual. Plaintiff objects, arguing that Defendant's reasons for hiring Delk versus offering the position to her were outdated and not relevant to Delk's hiring, and that Defendant "had no evidence at or around the time of Delk's hiring that Plaintiff was not performing in a satisfactory manner" such that she should not have been considered for the Executive Director position. Obj. at 8, ECF No. 66.

The court agrees with the Report. First, Plaintiff fails to offer evidence that the concerns raised in the "outdated" assessment by Grenzenbach Glier and Associates (GGA) and those expressed by colleagues regarding the quality and timeliness of Plaintiff's work were either inaccurate or had been allayed at the time Delk was hired. More importantly, however, Plaintiff's disagreement with the proffered reasons regarding the "peculiar manner" in which Delk was hired, Obj. at 9, fails to establish that the reasons advanced for hiring Delk were pretextual. Accordingly, this claim fails and Defendant is entitled to summary judgment.

### 2. Failure to Promote to Senior Director of Development (SDoD)

The Report assumes without deciding that Plaintiff can establish a *prima facie* case of racial

---

[1] *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

discrimination in failure to promote her to SdoD but concludes that Plaintiff has failed to establish Defendant's proffered legitimate nondiscriminatory reason for declining to promote Plaintiff was pretextual. Plaintiff objects, arguing that Defendant's requirement that Plaintiff submit written justification for her request for promotion was "pregnant with discriminatory animus toward Plaintiff." Obj. at 10.

Plaintiff fails to offer any evidence that Defendant's proffered legitimate nondiscriminatory reason for its decision not to promote Plaintiff was pretextual. In particular, she fails to allege that white employees who requested promotion were not required to submit written justification for promotion to SDoD. Accordingly, Defendant is entitled to summary judgment on this claim and it is dismissed with prejudice.

### 3. Working Conditions

The Report finds that Plaintiff fails to establish a *prima facie* case of racial discrimination relating to her allegations of worse working conditions after Delk was hired because Plaintiff's allegations regarding her working conditions were not adverse employment actions. Plaintiff objects, contending that she "identified and asserted multiple adverse employment actions carried out by the Defendant." Obj. at 10. While Plaintiff retained her title and salary after Delk was hired, she argues that she "suffered a demotion in work responsibility, goals, and opportunit[ies,] which "setup [sic] Plaintiff for failure." *Id.* at 11. Plaintiff maintains that "white employees have not been identified as going through the same treatment," *id.*, and that she has "raise[d] clear issues of motive and intent on the part of Defendant." *Id.*

The court agrees with the Report's assessment that Plaintiff fails to establish that white employees did not suffer the alleged adverse employment actions under similar circumstances.

Plaintiff's claim for racial discrimination based on working conditions therefore fails, and Defendant is entitled to summary judgment on this claim.

### 4. Adverse Employment Action – Change in Position

In Plaintiff's response in opposition to Defendant's summary judgment motion, Plaintiff argues that the "ultimatum" given to her relating to continuing to work for Delk or move to a similar position in Central Development was a retaliatory adverse employment action. The Report notes the Amended Complaint is devoid of reference to the "ultimatum" as being an adverse employment action, and that new matters cannot be raised in a response in opposition to a dispositive motion. Report at 24 n.21. More important, the Report finds that even if properly pled, Plaintiff was presented with the "ultimatum" before she signed her EEOC Intake Questionnaire or Complaint, and she failed to assert retaliation in her original EEOC complaint. Report at 20-21 n.17, ECF No. 63.

In opposition to the Report, Plaintiff admits "Plaintiff does not specifically identify the demotion and new position in [Central Development] in her Amended Complaint," as an adverse employment action but that "the same is relevant and properly pled within her allegation of disparate and worsened working conditions and heavier and more difficult schedules." Pl.'s Obj. at 6. Plaintiff offers no legal support for this contention, and her failure to raise this in her EEO complaint or plead it in her Amended Complaint precludes her ability to pursue the claim in this litigation.

### B. HOSTILE WORK ENVIRONMENT

Plaintiff objects to the recommendation that the court grant summary judgment to Defendant on her claim for hostile work environment. That recommendation by the Magistrate Judge rested on the conclusion that there is no evidence that the actions taken by Defendant were motivated by race.

Plaintiff objects, arguing that she has produced direct evidence of discrimination in the form of, *inter alia*, a statement made by Delk regarding "black and poor people."[2] Plaintiff testified in her deposition that

> I had a conversation with [Delk] about Richland [School] District Two. And she told me how great the district used to be, and she said that there were a number of – it all changed, and there were a number of blacks and poor people who came and it's never been the same. And she was very critical of the school district because of that.

Depo. of Wendi B. Nance at 318, ECF No. 52-1.

As recently noted by the Fourth Circuit,

> To be sure, viable hostile work environment claims often involve repeated conduct. That is because, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. For example, mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII. The same goes for simple teasing and offhand comments. Importantly, however, an isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious.

*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quotation marks, internal alterations, and citations omitted).

Even assuming that Delk made the remark attributed to her – which she denies – a one-time remark regarding "blacks and poor people" that was not directed at Plaintiff or any other employee cannot be deemed "severe and pervasive" such that it created a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). *See also id.* at 23 (finding that the determination of whether an objectively hostile or abusive environment exists is made by looking at all the circumstances, which "may include the frequency of the discriminatory conduct; its severity; whether

---

[2]As noted in the Report, Plaintiff also offers this "statement" as evidence in support of her disparate impact claim. *See* Report at 29-30 n.24.

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."). Accordingly, for this reason and for the reasons fully explained in the Report, there is insufficient evidence to support the conclusion that any of the actions taken by Defendant were racially motivated, and Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.

### C. Constructive Discharge Claim

As noted by the Report, Plaintiff asserted a constructive discharge claim under both disparate treatment and hostile work environment. The Report concludes that Plaintiff failed to administratively exhaust this claim.

Plaintiff objects, arguing that the Report miscalculated the time period between the filing of Plaintiff's EEO complaint and her resignation in March 2013, and that the Report failed to note that a letter dated March 13, 2013 put the EEOC and Defendant on notice of Plaintiff's constructive discharge claim. Plaintiff therefore contends that it would be reasonable to expect the EEOC to inquire as to the basis for her departure as a part of its investigation of her December 2012 EEOC Complaint. In response to Plaintiff's objections, Defendant points out that nothing in the March 2013 letter indicates Plaintiff intended to amend her EEOC complaint, particularly as the second paragraph of the letter asks the EEOC to contact Defendant in hopes of bringing the parties together for mediation. *See* Ex. 33 to M. for Summ. J. at 11, ECF No. 47-36.

The court agrees with the Report that the delay between the filing of Plaintiff's EEOC complaint and her departure from Defendant's employ is inconsistent with a claim of constructive discharge. Although the Report did not address what effect, if any, the March 13, 2013 letter had on Plaintiff's assertion of a constructive discharge claim, the court finds that the letter failed to

operate as an amendment to Plaintiff's EEOC complaint. First, the letter specifically failed to note that Plaintiff sought to amend her EEOC complaint to assert a constructive discharge claim. Additionally, Plaintiff has not contested Defendant's assertion that the letter contained a material misrepresentation in the first paragraph, as the letter indicated that Plaintiff's new position in Atlanta "pays less and offers fewer benefits" than her position with Defendant. *Id*. Moreover, even though served on Defendant, the letter failed to place Defendant on notice of a constructive discharge claim, as the letter indicated that because Plaintiff "has left her employment at the University of South Carolina to go to a new job in Atlanta, . . . I feel it would be in the best interest of both parties to try and resolve this case at mediation." *Id*. The letter then requested the EEOC to contact Defendant to determine whether Defendant would be amenable to mediation. *Id*. The letter simply did not operate to cure Plaintiff's failure to amend her EEOC complaint to assert constructive discharge.

### III. CONCLUSION

Having conducted a *de novo* review of the Report and underlying motion and related memoranda, and having fully considered Plaintiff's objections and Defendant's response, the court adopts the recommendations of the Report in full. Defendant's motion for summary judgment is **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 26, 2015